MILENKOVIC, Plaintiff in error, v. STATE, Defendant in error.†

Court of Appeals

*No. 77–727–CR. Argued September 13, 1978.—Decided October 18, 1978.*
(Also reported in 272 N.W.2d 320.)

---

† Petition to review denied, January 17, 1979.

For the plaintiff in error the cause was argued by *Mel S. Johnson,* assistant state public defender, with whom on the brief was *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

Before Decker, C.J., Cannon, P.J., Robert W. Hanson, Reserve Judge.

DECKER, C.J. The incidents from which the defendant's criminal conviction resulted occurred in the early morning hours of July 11, 1973. At approximately 11 p.m. on the evening of July 10, the prosecutrix left her apartment and proceeded to a bar and restaurant where she encountered the defendant and his companion, Bozdar Spajic. She had met the defendant on one previous occasion.

At approximately midnight, unaccompanied, she left to go to another bar and restaurant, where she knew the piano player. She proceeded to a third bar and restaurant at approximately 1:30 a.m. to visit her boyfriend, a bartender at that establishment. She often accompanied him to breakfast when he left work at approximately 2 a.m.

The defendant and Spajic entered the bar and seated themselves next to the prosecutrix. They offered to buy her a drink but she refused. At 2 a.m. the manager announced the bar was closed and she proceeded outside to wait in her car for her boyfriend to emerge. The prosecutrix claims that as she was walking to the car, Spajic grabbed her and began to hug and kiss her. She struck Spajic and attempted to get away, at which time, according to her testimony, the defendant called to Spajic and told him not to let her get away. She was forced into an automobile with the defendant and Spajic. The defendant started the car and drove out of the parking lot of the restaurant at which time Spajic again began to kiss and hug her. She testified that she bit Spajic on the lip, and that she was forced into the rear seat of the car where Spajic removed her clothing and forced her to have sexual intercourse with him. The defendant then switched places with Spajic, attempted to apologize to her, but when she refused his request to go out with him, he, too, forced her to have sexual intercourse with him.

After this incident the prosecutrix was dropped off in the parking lot of the restaurant where she picked up her car and drove to her apartment. She called her boyfriend who came to her apartment and found her to be hysterical. Although she was hesitant to report this incident to the police, later that day she went to the police department and reported the occurrence.

The police accompanied the prosecutrix to Milwaukee County General Hospital where an examination of a vaginal smear taken from the prosecutrix revealed the presence of spermatozoa. Tests on the "body shirt" which was worn on the night of the incident also revealed the presence of spermatozoa in the crotch area and minute spots of blood of a type different from the prosecutrix around the neckband. The medical examination also revealed that the prosecutrix had gonorrhea.

Prior to any testimony being presented at trial, the state moved the court for an order to preclude the defense from cross-examining the prosecutrix or presenting any direct evidence regarding her prior sexual conduct with third persons or the presence of gonorrhea. The motion was granted with the limited exception that the defense was allowed to ask the prosecutrix whether she had ever engaged in consensual premarital intercourse prior to this incident.[1] The prosecutrix answered affirmatively and, by the terms of the court's order, the defense was precluded from introducing any evidence of specific sexual activity.

It is that order which constitutes the entire basis for the defendant's appeal. Defendant contends that the ruling was error because:

1. Such evidence was relevant under the provisions of the Wisconsin Rules of Evidence, and

---

[1] Our view regarding the relevance of such evidence would require its exclusion.

2. The order denied the right of confrontation and the due process right to present a defense.

We disagree and affirm the judgment and order.

I.

*RELEVANCE*

The defendant contends that the evidence of the prosecutrix' prior sexual conduct and her venereal disease was relevant under any one or all of the following theories:

1. Her prior sexual conduct would give rise to an inference of consent to this act of nonmarital sexual intercourse.

2. Her knowledge that she had been infected with gonorrhea prior to this incident prompted her to seek out a justification satisfactory to her boyfriend. According to the defense theory, this was the motive for falsely accusing the defendant of rape.

3. Because the state had no medical record of the defendant being treated for gonorrhea, and gonorrhea is a "highly contagious" disease, the defense maintains that introducing evidence that the prosecutrix had contracted the disease prior to this incident would give rise to an inference that the defendant had not engaged in an act of sexual intercourse with her.

We deal with the relevance of the evidence pertinent to each defense theory separately.

A) *Admissibility of Evidence of Prior Episodes of Sexual Intercourse to Establish Likelihood of Consent.*

The state's motion *in limine* successfully sought exclusion of evidence of prior acts of sexual intercourse by the prosecutrix. Defense counsel not only objected to the exclusion but offered to prove that the prosecutrix, a few days before the alleged rape, had an act of consensual intercourse with another man in an automobile

located in the parking lot of one of the bars in which she was present on the night of the alleged rape.

Character evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of the fact to reward the good . . . and to punish the bad . . . because of their respective characters despite what the evidence in the case shows actually happened.[2]

American law has long recognized the weakness of an inference that a person necessarily acts in accordance with his character upon a particular occasion. That inference has been rejected in the general rule that character evidence is irrelevant and inadmissible to prove conduct upon a particular occasion. Sec. 904.04(1), Stats. However, when the character of the victim or an accused is a consequential material proposition, or character evidence is utilized for impeachment purposes, the ban on the circumstantial use of character evidence is inapplicable.[3]

Section 904.04(1)(b), Stats., permits an accused to introduce evidence of the relevant character of a victim. In a rape case, nonconsent of a victim is an element of the crime.[4] Historically, evidence of the victim's reputation for chastity was held admissible upon the theory that the evidence was relevant to an inference of the likelihood of her consent.[5] The decisions are in conflict whether evidence of specific instances of sexual activity

---

[2] Cal. Law Revision Comm'n. Rep. Rec. & Studies, 615 (1964).

[3] Secs. 904.04(1)(a), (b) & (c) and 906.07, 906.08 & 906.09, Stats.

[4] Sec. 944.01, Stats. (1973).

[5] *Kaczmarzyk v. State, infra.*

could be introduced other than as impeachment of the victim.[6]

First we must determine whether prior episodes of sexual intercourse by the victim with persons other than the defendant are admissible in evidence in a rape case by authority of sec. 904.04(1)(b). We hold such evidence is not admissible and rely upon *Stanislawski v. State,* 62 Wis.2d 730, 216 N.W.2d 8 (1974):

> As to acts of this complainant or any other removed in time or place from the occasion of the alleged rape, we would not require a trial court to put a complainant on trial as to sexual episodes in her past life. It is the defendant in a rape case, not the complainant, who is to be placed on trial. p. 749.

We believe that *Stanislawski* does not prohibit the introduction of evidence of consensual sexual relations between the accused and the victim not remote to the alleged rape.

Before *Stanislawski,* "[T]he law recognize[d] that a woman of previously unchaste character is more likely to consent to an act of sexual intercourse than is a woman who is strictly virtuous." *Kaczmarzyk v. State,* 228 Wis. 247, 280 N.W.2d 362 (1938); *State v. Muhammad,* 41 Wis.2d 12, 162 N.W.2d 567 (1968); *State v. Waters,* 28 Wis.2d 148, 135 N.W.2d 768 (1965). We are unaware of the demonstration of the logic of such an arrogant statement. Nor are we aware of the development of what would appear to be a logical corollary of such a rule: A man of "previously unchaste character" is more likely to rape a woman.

When the court in *Stanislawski* stated "we would not require a trial court to put a complainant on trial as

---

[6] *Compare State v. Geer,* 13 Wash. 71, 533 P.2d 389 (1975) with *Packineau v. United States,* 202 F.2d 681 (8th Cir. 1953).

to sexual episodes in her life," the supreme court made two implicit decisions. First, chastity reputation of the victim is not *a pertinent trait of character* of a rape victim. Second, specific instances of the victim's sexual activity may not be introduced into evidence pursuant to secs. 904.05 (2) (proof of pertinent trait of character of a person by evidence of specific instances of conduct) and 906.08 (2) (attacking credibility by inquiry into specific instances of conduct on cross-examination), Stats. Any other interpretation would reduce the pertinent quotation from *Stanislawski* to a pious statement of the state's burden of proof. It would also subvert the course of the supreme court's expressed view by applying a tired, insensitive and archaic platitude of yesteryear.

Ordinarily we would be hesitant to interpret *Stanislawski* as a *sub silento* overruling of long standing decisions. In this case, however, the legal principle overruled is so patently infirm that its sudden and unheralded demise deserves an appropriate requiem.

The legal rule that permitted evidence of sexual episodes of the victim to be introduced as evidence of consent was patently infirm because:

1. There is no authoritative or convincing evidence in the record or cited by the defendant which suggests that consent to sexual intercourse on one or many occasions produces an invariable propensity to consent or the likelihood to consent to the defendant.

2. Even if promiscuity suggests the likelihood of consent to any person, it in no way suggests that the woman will then claim rape.

3. Character evidence is ordinarily of slight probative value with respect to a single incident.

4. In those instances where character evidence is most probative, it is directed to the state of mind of the actor or aggressor rather than passive or consensual conduct.

5. Character evidence is prejudicial tending to afford the trier of the fact an opportunity for distraction that suggests abandoning the duty to consider the evidence.

6. As an exception to a fundamental rule barring a character to conduct inference, it hazards the prospect that the trier of fact will disregard the evidence and punish the victim for immoral behavior.

We do not believe that evidence of the victim's prior sexual conduct with individuals other than the defendant is admissible for purposes of impeachment. Sec. 906.08 (2), Stats. We can see no logical relation between proof of prior "immoral behavior" and the inference that the victim is less likely to testify truthfully. Taken to its logical end, such a theory would permit impeachment of any witness, male or female, by questions regarding specific instances of "immoral behavior" under sec. 906.08, Stats.

The exclusion of evidence of the prior sexual activity of the victim was not error because prior sexual activity, unless it involves the victim and the accused at a time not remote to the alleged rape, is not a pertinent trait of character, nor is it relevant to consent in a rape case pursuant to sec. 904.04(1) (b), Stats.[7]

We note that in this case the defendant has not depended upon the ground that the prosecutrix consented to sexual intercourse. Ordinarily that circumstance would establish the inadmissibility of lack of chastity or specific instances of sexual intercourse.[8] Nonetheless, we

[7] The trial court permitted the defendant to inquire on cross-examination of the prosecutrix whether she had engaged in premarital sexual intercourse. She responded in the affirmative and further cross-examination was precluded. In our view, the permitted inquiry was not relevant and should have been prohibited. See note 1, *supra*.

[8] *Cf. Cleveland v. State*, 211 Wis. 565, 248 N.W. 408 (1933). Prosecutrix' chastity immaterial in prosecution for statutory rape.

consider the evidentiary issue because it arose *in limine* at the outset of the trial before the defense was postured. We also consider the issue because, historically, the issues of chastity and sexual activity have been held to affect credibility.

B) *Venereal Disease and the Motive to Falsely Accuse the Defendant.*

The defense offered to prove that the prosecutrix 1) had been engaging in sexual relations with her boyfriend and intended to continue doing so; 2) had contracted gonorrhea; 3) feared she had infected her boyfriend; 4) feared her boyfriend's anger and inquiries regarding the source of her venereal disease. The evidentiary hypothesis was that those circumstances motivated her to falsely accuse the defendant of rape to provide justification for having contracted the disease.

Defendant asserts as authority for the receipt of such character evidence the other crimes, wrongs and acts exception (sec. 904.04(2), Stats.) to the general ban on character evidence to establish a character to conduct inference (sec. 904.04(1), Stats.). The other crimes, wrongs and acts exception permits the introduction of such evidence to prove intent, plan, or motive. However, the offer of proof pursuant to sec. 901.03(1)(b), Stats., was fatally defective because what was offered to be proved does not support and establish the evidentiary hypothesis. Essential to the hypothesis was the offer to prove that the boyfriend did not know prior to the alleged rape that the prosecutrix had contracted gonorrhea or that the prosecutrix did not know whether the boyfriend knew she had contracted gonorrhea. If the boyfriend knew of the venereal disease and the prosecutrix was aware that he knew of the disease, the en-

tire inference of intent, plan, or motive to falsely accuse fails and the offered evidence becomes irrelevant.

It is in that respect that the instant case differs from *People v. DeLawder*, 28 Md. App. 212, 344 A.2d 446 (1975), relied upon by the defendant and cited in *Angus v. State*, 76 Wis.2d 191, 251 N.W.2d 28 (1977).

In *DeLawder*, the pivotal point of the offer of proof was the assertion that the mother of the prosecutrix was "very strict, and not the type of person that a girl could come home and tell her mother she was pregnant." The Maryland Court of Appeals interpreted the evidentiary hypothesis of the offer of proof as a claim by the prosecutrix "that DeLawder raped her because she was afraid to tell her mother she had voluntarily had sexual intercourse with others." Although there was never an offer to prove that the mother did not know of the illegal pregnancy at the time of the intercourse with DeLawder, implicit in the Maryland Court of Appeals decision is the assumption that the mother was at the time in question unaware of the pregnancy. Having made that assumption, the Maryland court applied *Davis v. Alaska*, 415 U.S. 308 (1974), and found a violation of DeLawder's confrontation right in the denial of cross-examination of the prosecutrix with respect to prior sexual intercourse and other evidence offered in support of the offer of proof. We believe the assumption of the lack of knowledge of the mother was unwarranted. The defendant did not offer to prove that fact.

Although evidence of motive is admissible, *Holmes v. State*, 76 Wis.2d 259, 251 N.W.2d 56, 60 (1977), the evidence which is offered must be probative of the motive. Stated another way, " '[R]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Sec. 904.01, Stats.

To review an alleged trial court error of exclusion of evidence it is necessary that error be self-evident from the nature of the evidence excluded (that is not the case here) or an offer of proof by statement of counsel or in question and answer form (sec. 901.03(1)(b), Stats.) must be recorded (sec. 901.03(2), Stats.) out of the hearing of the jury wherever practicable (sec. 901.03(3), Stats.).[9]

The offer of proof need not be stated with complete precision or in unnecessary detail but it should state an evidentiary hypothesis underpinned by a sufficient statement of facts to warrant the conclusion or inference that the trier of fact is urged to adopt.

In this case the offer of proof fails because there was no offer to prove that the boyfriend of the prosecutrix did not know before the alleged rape that she had gonorrhea. Without that evidence the jury would be tendered a conclusion or inference of false accusation of the defendant that could be arrived at only through conjecture or speculation. Without that addition to the offer of proof we are asked to reverse a conviction and order a new trial upon the basis of an inadequate evidentiary hypothesis which would be exploded by evidence of prior knowledge of the venereal disease. An offer of proof need not be syllogistically perfect but it ought to enable a reviewing court to act with reasonable confidence that the evidentiary hypothesis can be sustained and is not merely an enthusiastic advocate's overstated assumption. We hold that the offer of proof was inadequate to es-

---

[9] *Lambert v. State*, 73 Wis.2d 590, 243 N.W.2d 524, 532 (1976); *State v. Hoffman*, 58 Wis.2d 21, 205 N.W.2d 386, 387 (1973); *State ex rel. Schlehlein v. Duris*, 54 Wis.2d 34, 194 N.W.2d 613, 615 (1972); *State v. Moffet*, 46 Wis.2d 164, 174 N.W.2d 263, 265 (1970); *State v. Klein*, 25 Wis.2d 394, 130 N.W.2d 816, 823 (1964) *cert. denied* 380 U.S. 951 (1965).

tablish the relevance of the information sought to be elicited from the complainant or offered through other witnesses.[10]

In *Angus, supra,* the Wisconsin Supreme Court reached a similar result although the adequacy of an offer of proof was not involved because it was self-evident from the question objected to that the solicited answer was directed to the motive of the prosecutrix to falsely accuse the defendant. The court held that the responses sought to be elicited were irrelevant to motive and in any event were properly excluded as unfairly prejudicial.

C) *Venereal Disease and the Inference of no Sexual Intercourse Between Prosecutrix and the Defendant.*

The defendant offered to prove that (1) the prosecutrix was infected with gonorrhea at the time of the alleged rape; (2) gonorrhea is highly contagious; (3) a male who engages in sexual intercourse with an infected female has a 50 percent chance of contracting the disease; (4) physicians in Wisconsin are required by law to report every case of gonorrhea treated to the Department of Health and Social Services; (5) the de-

---

[10] We note the authority conferred on the trial judge to direct that an offer of proof be made in question and answer form. We strongly urge trial courts to utilize this procedure whenever practicable. We conclude that offers of proof made in this manner will significantly reduce the possibility that trial counsel will inadvertently fail to offer to prove a crucial fact upon which the conclusion or inference which he seeks to establish necessarily depends. We also believe such a procedure will assist the trial court and any reviewing court in determining whether the evidentiary hypothesis can actually be sustained or the offer is overstated. Although the question and answer method of making an offer of proof may take a little more time, it enable the trial court and reviewing court to approach the evidentiary problem with some confidence that the evidentiary problem really exists.

partment had no record of the defendant being treated for the disease.

From that offer of proof the defendant urged the inference that he had not engaged in sexual intercourse with the prosecutrix and thus the rape offense with which he was charged did not occur.

Again we find the evidentiary hypothesis unsupported by the offer of proof. There was no express offer of proof that the defendant did not contract the venereal disease subsequent to the alleged offense. Defendant merely offered to prove the absence of any state record of treatment for the disease. Although that offer supports the inference that he was not treated in Wisconsin, it does not support an inference that he was not infected. He may not have been aware of the infection; he may have been treated in another state; or he may have chosen to forego treatment.

The evidence offer was inadequate to support the tendered inference and was therefore irrelevant.

## II.

## CONFRONTATION AND DUE PROCESS

The right to confront witnesses and to present testimony in defense of a criminal charge are fundamental elements of the sixth and fourteenth amendment rights of a criminal defendant. *Davis v. Alaska, supra, Lindsey v. Normet,* 405 U.S. 56 (1972). However, these fundamental rights are not violated when the state precludes a defendant from presenting evidence which is irrelevant. *Hughes v. Mathews,* No. 77–2010, slip op. at 9–10, (7th Cir., decided May 12, 1978). We hold, as did the Michigan Court of Appeals in *People v. Thompson,* 76 Mich. App. 705, 257 N.W.2d 268 (1977), that the evidence

which the defendant sought to introduce was irrelevant to the charges against him and thus there was no constitutional violation in precluding him from presenting such evidence.

*By the Court.*—Judgment and order affirmed.