STATE of Wisconsin, Plaintiff-Respondent,

v.

Emilio PADILLA, Defendant-Appellant.†

Court of Appeals

*No. 81–1407–CR. Argued September 30, 1982.—Decided December 27, 1982.*
(Also reported in 329 N.W.2d 263.)

† Petition to review denied.

For the defendant-appellant there was a brief submitted by *Glenn L. Cushing,* assistant state public defender. Oral argument by *Glenn L. Cushing.*

For the plaintiff-respondent there was a brief submitted by *Bronson C. La Follette,* attorney general, and *David J. Becker,* assistant attorney general. Oral argument by *David J. Becker.*

Before Voss, P.J., Brown and Scott, JJ.

BROWN, J.  Emilio Padilla was convicted of sexual contact with a ten year old contrary to sec. 940.225(1)(d), Stats. Hearsay testimony was admitted both at the preliminary examination and at trial regarding the young victim's statements to others about the assault. We hold there was no error in doing so. Also, Padilla wanted to cross-examine the ten year old about a possible previous sexual experience. With limited exceptions, such inquiry is prohibited.[1]  Since the defendant did not supply a suf-

---

[1] Section 972.11, Stats., states in pertinent part:

(1) Except as provided . . . , the rules of evidence and practice in civil actions shall be applicable in all criminal proceedings unless the context of a section or rule manifestly requires a different construction . . . .

(2) . . . .

(b) If the defendant is accused of a crime under s. 940.225, any evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into evidence during the course of the hearing or trial, nor shall any reference to such conduct be made in the presence of the jury, except the following, . . . :

. . . .

3. Evidence of prior untruthful allegations of sexual assault made by the complaining witness.

The only other possible exception to this statute is a constitutional claim that a statute prohibiting cross-examination on a par-

ficient factual basis for going into this line of examination, we hold no error occurred.

This female child was ten years old at the time. The defendant, a boyfriend of the child's mother, was accused of assaulting the girl three separate times and was convicted of one count, namely, the last or most recent incident.

At the preliminary examination, the girl did not take the stand. Only the girl's mother testified. She said her daughter told her about the assaults three days after the final incident. There was an objection to this line of testimony on hearsay grounds. The objection was overruled, and the mother was able to complete her testimony. Following the conclusion of the mother's testimony, there was a different objection that hearsay alone, without confrontation of the victim, was insufficient evidence upon which to establish probable cause.

Despite objections both before and during trial, the mother was also allowed to testify at trial concerning her daughter's account of the sexual assaults, as was a juvenile investigator who had talked with the girl.

The young girl also testified and was cross-examined. Thus, no question was raised at trial of whether using hearsay in lieu of the victim's testimony denied meaningful confrontation.

Further, at a hearing prior to trial, defense counsel argued that he must be permitted to cross-examine the child at trial about prior accusations of sexual intercourse with her stepfather, allegedly occurring when the child was nine years old. The stepfather had also, at one time, lived in the home with the mother and daughter. Defense counsel argued two alternative positions. First, if the prior incidents complained of were found to be untruthful, then cross-examination would be permissible under

ticular subject may affect an accused's right of effective cross-examination.

exception to the rape shield statute. Second, that if the prior incidents actually occurred, they could be the basis of the child's familiarity with intercourse. From this familiarity, she could invent a subsequent and parallel story regarding the defendant. The trial court denied the motion.

We will first decide the hearsay issue. Our supreme court has formulated, by case law, a special species of the excited utterance exception to the hearsay rule for statements made by young children alleged to have been the victim of sexual assault. The exception is an outgrowth of sec. 908.03 (2), Stats., which provides, in part:

Hearsay exceptions; availability of declarant immaterial. The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .
(2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

This statute permits admission of a hearsay report at trial if the original statement related to a startling event and if the declarant made the statement while under the stress of excitement caused by the event. The exception is based upon spontaneity and stress, endowing such statements with sufficient trustworthiness to overcome the reasons for exclusion of hearsay. *Muller v. State,* 94 Wis. 2d 450, 466–67, 289 N.W.2d 570, 578–79 (1980). The underlying basis for this exception is that people instinctively tell the truth, but when they have time to stop and think, they may lie. *Id.* The interval between the incident and the declaration is measured by the duration of excitement, rather than mere time lapse. *Christensen v. Economy Fire & Casualty Co.,* 77 Wis. 2d 50, 56–57, 252 N.W.2d 81, 84–85 (1977). A statement of a declarant

whose condition at the time of declaration indicates that he is still under the shock of his injuries or other stress due to special circumstances will be admitted. *Christensen,* 77 Wis. 2d at 56–58, 252 N.W.2d at 84–85.

A broad and liberal interpretation is given to what constitutes an excited utterance when applied to young children. *Love v. State,* 64 Wis. 2d 432, 219 N.W.2d 294 (1974) ; *Bertrang v. State,* 50 Wis. 2d 702, 184 N.W.2d 867 (1971) ; *Bridges v. State,* 247 Wis. 350, 19 N.W.2d 529, *reh'g denied,* 19 N.W.2d 862 (1945). In this special circumstance, the court has held that stress is present even some time after the triggering event. This ascertainment of prolonged stress is born of three observations. First, a child is apt to repress the incident. *Bertrang,* 50 Wis. 2d at 707–08, 184 N.W.2d at 870. Second, it is often unlikely that a child will report this kind of highly stressful incident to anyone but the mother. *Cf. Bridges v. State,* 247 Wis. 350, 19 N.W.2d 529 (1945). Third, the characteristics of young children work to produce declarations "free of conscious fabrication" for a longer period after the incident than with adults. It is unlikely a young child will review the incident and calculate the effect of the statement. *See United States v. Nick,* 604 F.2d 1199, 1204 (1979).

As a result, Wisconsin cases have held extrajudicial narratives by the young victim to be admissible even though the statements have not been made immediately following the incident. In *Bertrang,* the defendant raped his nine-year-old daughter. The day after the rape, the daughter reported the incident to her mother. The mother was allowed to testify as to what the daughter told her. In affirming the case, the supreme court noted the high stress of the incident, the spontaneity of the report, and its relative contemporaneity with the incident.

In *Love v. State,* 64 Wis. 2d 432, 219 N.W.2d 294 (1974), the defendant assaulted a three-and-a-half-year-old girl. The girl told her mother about it the next morning, after the mother noticed blood on the girl's undergarments. The mother was allowed to testify concerning her daughter's statements.

In *Bridges v. State,* 247 Wis. 350, 19 N.W.2d 529 (1945), the mother of a seven-year-old girl was permitted to testify to statements made by the girl approximately one hour after the assault.

Finally, in *State ex rel. Harris v. Schmidt,* 69 Wis. 2d 668, 230 N.W.2d 890 (1975), the defendant was accused of assaulting his five-year-old stepson. The boy told his mother about it the next day, and, fifteen days later, the defendant's probation officer was also told about it. Although objected to, both the mother and the probation officer were permitted to testify at a probation revocation hearing as to what the boy said. The supreme court said the testimony was permissible.

Padilla attempts to distinguish the facts in this case from the others. He notes that the child in this case was ten years old which is older than the ages of the children in other cases. He argues that, at this age, the child is now old enough to review the incident and calculate the effect of her statement after the initial spontaneity period has passed. Padilla also reasons that the three day time interval, which outdistances the *Bridges, Bertrang* and *Love* periods, is too long a lapse to countenance a finding of spontaneity, contemporaneity and continued stress. He concludes that because the basis for finding statements of young assault victims to be trustworthy has been lost in this case, the special exception to the hearsay rule should not have been allowed.

We do not agree. Contemporaneity is not a condition precedent to a finding of an excited utterance. There is nothing in sec. 908.03(2), Stats., or the seminal cases of

*Christensen* or *Muller* which suggest such a thing. Quite to the contrary, as we have already noted above, the time period "is measured by the duration of the condition of excitement rather than mere time lapse from the event or condition described." *Christensen,* 77 Wis. 2d at 57, 252 N.W.2d at 85. Thus, *Christensen* does not mandate that the statement be contemporaneous. The dictionary definition of contemporaneous is that which is "existing, occurring, or originating during the same time."[2] The rule instead asks whether the statement is spontaneous —which is defined as having proceeded "from natural feeling . . . without external constraint."[3] In the case of young assault victims, the spontaneity is observed to occur at longer time periods from the event than is normally the case with adults.

A three-day time period, as in the case here, is less contemporaneous than the time periods of the other reported cases. This does not matter, however, because spontaneity and stress are the keys. The young girl was assaulted by her mother's boyfriend. This alone is an event that a youngster would wish to repress. The record also shows that the defendant told her that if she said anything to her mother about the assault, "he would hit her." The mother testified that the victim was "afraid, scared." It is apparent from the record, then, that the stress from the assault was still upon the girl three days after the assault. Her repressed statement came out only after prodding by the mother. Therefore, the statements were made under nervous stress which would make it highly unlikely that the child's rational mind could interpose itself between the event and the ultimate utterance.

[2] Webster's New Collegiate Dictionary 245 (1977).
[3] Webster's New Collegiate Dictionary 1124 (1977).

Nor does the age of the victim convince us that there could not have been a prolonged period of stress justifying a greater allowable interval between incident and declaration than would be permitted an adult. Even though the child is older than the children of the other reported Wisconsin cases, she is only one year older than the child in *Bertrang*. We do not believe that a ten-year-old is significantly more able than a nine-year-old to put aside the fear and uncertainty of what will happen if the story is told. It is unlikely that a ten-year-old is in a position, psychologically, to review the incident and calculate the effect of his or her statement. A ten-year-old is also just as unlikely as the younger child to report a highly stressful incident to one other than the mother. We conclude that the age of this child does not take the statement out from under the realm of the special exception for youthful assault victims.

Accordingly, it was not reversible error to admit, at the preliminary examination and again at trial, the hearsay testimony regarding the victim's statements about the defendant's sexual assault on her.[4]

Padilla maintains, however, that even if the girl's out-of-court statement can be properly admitted as an exception to the hearsay rule, there remains a confrontation problem. The child did testify and was cross-examined at the trial, so no confrontation issue exists with respect to the trial itself. The child did not testify at the preliminary examination, however, and there lies the confrontation issue.

Of course, there is no constitutional right to confront witnesses at a preliminary examination. That much is

---

[4] At the preliminary hearing and again at trial, the mother testified to statements made to her by her daughter. Also at trial, a social worker testified to statements made to her by the victim. Both are a subject of this appeal, but both are admissible because they were spontaneous and made under stress.

clear from *Mitchell v. State,* 84 Wis. 2d 325, 336, 267 N.W.2d 349, 354 (1978). Padilla cites *Mitchell,* however, for the proposition that even if no constitutional right of confrontation exists, a *statutory* right of confrontation is available. *Mitchell* states:

[T]here is no constitutional right to confront adverse witnesses at a preliminary examination. However, in Wisconsin an accused is by statute given the right to confront witnesses at this stage. [Citations omitted.]

Rule 970.03, Stats., describes the various criminal procedure rules relating to preliminary examinations. The section referred to in *Mitchell* is Rule 970.03(5), which states:

(5) All witnesses shall be sworn and their testimony reported by a phonographic reporter. The defendant may cross-examine witnesses against him, and may call witnesses on his own behalf who then are subject to cross-examination.

Padilla does not pretend to argue that *Mitchell* requires the state to produce all its witnesses at the preliminary examination so they may be confronted. He does argue, however, that the evidence actually produced by the state for preliminary hearing purposes must be accessible to cross-examination. He reasons that since hearsay is produced, but not accessible to cross-examination, his statutory right of confrontation is violated, and, therefore, hearsay cannot be admissible. Thus, because the unconfronted hearsay evidence was the only evidence produced and no other direct evidence was presented, nothing remains to support a bindover. He concludes the trial court was without jurisdiction to try the case.

Our examination of the purposes behind preliminary examinations yields a different explanation of Rule 970.-03(5), Stats. At a preliminary examination, the trier of fact's only duty is to find that the story has a plausible

basis. *Wilson v. State,* 59 Wis. 2d 269, 294, 208 N.W.2d 134, 148 (1973). The trier of fact, therefore, is not engaged in determining the truthfulness of the state's case but merely whether, *if believed,* the story has a plausible basis in fact. *Virgil v. State,* 76 Wis. 2d 133, 144, 250 N.W.2d 378, 384 (1977). Truthfulness goes to the weight of the evidence, not to admissibility, and is for the jury to determine at trial.

Because truthfulness is not tested at the preliminary examination, we come to the guiding purpose behind cross-examination at the preliminary examination. The witnesses who actually take the stand can be cross-examined as to whether their story is believable, *i.e.,* whether they were in a position to see what they observed, or whether they were able to hear what they say they heard. Thus, focusing on the issue in this case, the mother could have been and was tested on the stand to determine if she was actually in a position to hear the hearsay declarant make the out-of-court statement, that is whether she was believable in relating her story, whether she had a good memory of the hearsay statement and whether she was relating it accurately.

So it is the person taking the stand who must tell a plausible story. As part of the plausible story, hearsay may be used by that person. Whether that person may properly use the hearsay as an aid to telling the story is a question of admissibility. If the hearsay hurdle is met and the hearsay statement is admissible under one of the exceptions to the hearsay rule, it may be used by the witness as a probative building block, rather like a piece of documentary evidence, in telling the story to the magistrate.

We conclude, therefore, that the statute permits cross-examination of only those people actually called to the stand. In telling their story, they may use whatever admissible evidence they can to aid in their telling of the story. Admissible hearsay is just one of those aids.

With this discussion in mind, it is easy to explain *Mitchell.* Mitchell was charged with driving a vehicle without the owner's consent. His defense was that he had been given permission to drive the car by a friend who claimed to be the owner. The arresting officers observed, at the time, that the ignition switch had been tampered so that any General Motors key could start the vehicle.

The owner of the car did not testify at the preliminary examination. To satisfy the elements of ownership interest and nonconsent, the arresting officer testified that he had discussed these two matters with the owner during a telephone conversation. In addition, the state produced a record of the long distance telephone call to the owner and the police incident report notifying law enforcement personnel of the theft.

The supreme court ruled that the statements attributed to the owner during the telephone conversation were inadmissible hearsay. The court dealt the same fate to the record of the telephone call and the incident report. The court held, however, that it made no difference. This was because other independent evidence was provided by personal observation testimony of the arresting officer. This independent evidence, standing by itself, supported a finding of probable cause without reliance upon inadmissible hearsay. Therefore, the determination of probable cause had sufficient basis even if the hearsay testimony could not be considered due to inadmissibility. The supreme court reached a similar conclusion respecting Mitchell's arguments that he was denied his right to confront the declarant of the hearsay.

The *Mitchell* court specifically mentioned the hearsay in the case as amounting to inadmissible hearsay. Inadmissible hearsay is not allowed at a preliminary examination except in specific instances. *See* sec. 970.03 (11),

Stats.[5] Thus, the police officer in *Mitchell* could not use inadmissible hearsay as an aid to telling the magistrate a plausible story. That is what *Mitchell* says and that is all it says. We conclude that Padilla has no statutory confrontation right to confront the hearsay declarant at preliminary examination.

The last issue reached is whether the trial court erred in refusing to permit inquiry into the young child's prior accusations against another man, her stepfather. Section 972.11(2)(b), Stats.,[6] prohibits the introduction of evidence relating to prior sexual conduct of the complaining witness in a sexual assault prosecution. The exception to the rule excepts from prohibition "evidence of prior untruthful allegations of sexual assault made by the complaining witness." Padilla's first claim is that cross-examination of the unconfirmed prior allegations

[5] Section 970.03(11), Stats., became effective in 1980 and merely codified the general rule in Wisconsin that inadmissible hearsay cannot be used at a preliminary examination. It enacted limited exceptions, apparently in recognition that total adherence to the general rule would make proof of certain elements at a probable cause hearing unnecessarily burdensome. Consequently, sec. 970.-03(11) now provides that:

The court may admit a statement which is hearsay and which is not excluded from the hearsay rule under ss. 908.02 to 908.045 to prove ownership of property or lack of consent to entry to or possession or destruction of property.

[6] Section 972.11(2)(b)3, Stats., states in pertinent part:

(b) If the defendant is accused of a crime under s. 940.225, any evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into evidence during the course of the hearing or trial, nor shall any reference to such conduct be made in the presence of the jury, except the following, . . . :

. . .

3. Evidence of prior untruthful allegations of sexual assault made by the complaining witness.

of sexual intercourse with the stepfather should have been allowed as an exception to this statute.

At the preliminary examination, the mother testified that her daughter had informed her of prior incidents of sexual intercourse with the stepfather. The defense thereafter offered the testimony of a Dr. Krill. Dr. Krill examined the victim and found her hymen to be intact.

This testimony alone, however, does not mean that the young girl's statements were untruthful. The doctor testified, in fact, that the victim's intact hymen did not render it impossible that she had sexual intercourse with her stepfather. Further, there was no evidence that the "sexual intercourse" complained of actually consisted of penetration.

We conclude the exception is not applicable to the facts of this case because there has been no proof of prior untruthful allegations submitted.

The second claim is that if the allegations of sexual intercourse with the stepfather were, in fact, truthful, their admission was constitutionally required as a means by which to counter a logical supposition which might be framed by the jury like this: that the young victim's account of the present sexual assault must be true because the victim could have no other source for the "considerable knowledge of the details of sexual intercourse that her account displayed."

This second claim takes its cue from *Davis v. Alaska,* 415 U.S. 308 (1974). In *Davis,* there was a state statute prohibiting reference to a witness's juvenile record during cross-examination. Davis' counsel wanted to introduce the juvenile record of a key prosecution witness. The theory of the defense was that the witness might have made a hasty and faulty identification of the defendant in order to shift suspicion away from himself, or he might have been "subject to undue pressure from the police and made his identifications under fear of possible

probation revocation." *Davis,* 415 U.S. at 311. The Supreme Court held that where there exists a state statute precluding the admission of certain evidence, that statute must give way, in some instances, to the accused's right to confront the accuser. Although there are often compelling reasons for a state rule excluding evidence, these compelling reasons must be balanced against the right of "effective" cross-examination. *Davis,* 415 U.S. at 318.

Padilla analogizes *Davis* to the facts in this case. He acknowledges the state's legitimate interest in precluding the admission in evidence of a prosecutrix's past sexual conduct. He also concedes that such evidence is usually of low probative value and is likely to be misused. He asserts, however, that where a young complainant exhibits a detailed knowledge of sexual intercourse, the jury will naturally draw an inference that the detailed knowledge was obtained during the commission of the sexual assault she is complaining about. The only way to counter this inference, Padilla explains, is to present an alternative source for that knowledge—prior sexual experiences.

Essential to Padilla's hypothesis is that the following evidence submitted by the young girl could just as easily have been learned from the prior sexual assault as from the present sexual assault: the young victim testified that the defendant, after pulling out his penis and pushing on her "thing" between her legs, started "playing with his penis" until a whitish-yellow "cream" came out on her housecoat. On the housecoat worn by the victim at the time of the assault were found seminal stains.

Obviously, if the prior sexual experience consisted of the stepfather also pushing between her legs and also playing with himself, and also emitting semen on her housecoat, then it can be inferred that the explicit sexual information was not necessarily gleaned from the present sexual assault.

We do not know the facts of the alleged prior sexual assault. It may have been, for instance, that the prior sexual assault consisted solely of the stepfather fondling her with all of his clothes on. If that were in fact the case, then, going into the prior sexual assault on cross-examination of the young girl would have absolutely no effect on the jury's inference.

The proper way to determine whether the prior sexual experience would in any way be relevant to negating the inference would be to present an offer of proof to the court. *Milenkovic v. State,* 86 Wis. 2d 272, 272 N.W.2d 320 (Ct. App. 1978). In line with the *Milenkovic* reasoning, the defense should offer to prove that: (1) the prosecutrix had engaged in an act of sexual relations with a man prior to the present sexual assault; (2) the prior sexual relations gave her the same type of sexual knowledge that she testified to concerning the present sexual assault.

Although the defense had the mother's testimony showing that, quite possibly, the prosecutrix had engaged in a sexual experience before the present assault, there was no offer of proof to show that the facts were so related as to be relevant. The assumption of the same type of explicit sexual knowledge as reportedly gained from the present sexual assault is unwarranted. Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to determination of the action more probable or less probable than it would be without the evidence. Sec. 904.01, Stats. We cannot tell the relevancy without an offer of proof. "An offer of proof by statement of counsel or in question and answer form (sec. 901.03(1)(b), Stats.) must be recorded (sec. 901.03(2), Stats.) out of the hearing of the jury whenever practicable (sec. 901.03(3), Stats.)." *Milenkovic,* 86 Wis. 2d at 284, 272 N.W.2d at 326.

"The offer of proof need not be stated with complete precision or in unnecessary detail but it should state an evidentiary hypothesis underpinned by a sufficient statement of facts, to warrant the conclusion or inference that the trier of fact is urged to adopt." *Id.* In *Milenkovic,* the court had this to say about the failure of an offer of proof:

> In this case the offer of proof fails because there was no offer to prove that the boyfriend of the prosecutrix did not know before the alleged rape that she had gonorrhea. Without that evidence the jury would be tendered a conclusion or inference of false accusation of the defendant that could be arrived at only through conjecture or speculation. Without that addition to the offer of proof we are asked to reverse a conviction and order a new trial upon the basis of an inadequate evidentiary hypothesis which would be exploded by evidence of prior knowledge of the venereal disease. An offer of proof need not be syllogistically perfect but it ought to enable a reviewing court to act with reasonable confidence that the evidentiary hypothesis can be sustained and is not merely an enthusiastic advocate's overstated assumption. We hold that the offer of proof was inadequate to establish the relevance of the information sought to be elicited from the complainant or offered through other witnesses.

*Id.,* 86 Wis. 2d at 284–85, 272 N.W.2d at 326.

We cannot improve upon the *Milenkovic* statement, and we feel it is wholly appropriate here. To allow cross-examination of a young child victim on a subject that may end up to be wholly irrelevant would be unfair to the child and might produce needless trauma while, at the same time, be of no evidential utility. We cannot allow such broad cross-examination unless the court is given an adequate evidentiary hypothesis.

In this case, it could have been suggested by defense counsel that the young child witness be examined prior to trial outside of the courtroom atmosphere, *in camera,*

to determine whether there was any reasonable basis for cross-examining her at trial. *See* sec. 901.04(3), Stats. This was never asked for. Also, there was never any attempt to bring any other type of evidence germane to a reasonable hypothesis. Without even an attempt to provide a proper offer of proof, we cannot and will not accede to defendant's argument that he should have been allowed to cross-examine the young child victim on the alleged prior sexual assault.

*By the Court.*—Judgment affirmed.